UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


SID SMITH,

     Plaintiff,


v.                                CIVIL ACTION NO. 2:04-0499


UNITED STEEL WORKERS OF AMERICA,

     Defendant.


MEMORANDUM OPINION AND ORDER

          Pending is the motion for summary judgment filed by

defendant United Steel Workers of America ("USWA") on April 5,

2005; and the motion to extend the discovery deadline filed by

plaintiff Sid Smith ("Smith") on July 27, 2005.


I.


          On September 8, 2004, the court entered a scheduling

order establishing March 7, 2005 as the discovery deadline.  (9-

8-04 Order).  Pursuant to a joint motion, the court entered an

order on June 15, 2005 staying all proceedings and deadlines

pending rulings on the motions for summary judgment.[1]  (6-15-05
Order).  In his motion to extend the discovery deadline filed
over one month later, plaintiff alleged that he was made aware of
evidence regarding similarly situated employees only after the
discovery deadline had passed four and a half months earlier.
(Mot. to Extend Disc. ¶ 2).  Former defendant Appalachian
Regional Heathcare, Inc. ("ARH") filed a response and motion to
strike contending that plaintiff's motion to extend the discovery
deadline was brought solely to obstruct the court from ruling on
the summary judgment motions and did not set forth good cause for
an extension.  (ARH's Memo. in Supp. of Mot. to Strike and Resp.
to Pl.'s Mot. to Extend Disc. at 2-3).  Current defendant USWA
did not respond to the motion to extend the discovery deadline.

Rule 16(b) of the Federal Rules of Civil Procedure
provides that "a schedule shall not be modified except upon a
showing of good cause and by leave of the district judge . . ."
Fed. R. Civ. P. 16(b).  Rule 16(b) specifically contemplates the
establishment of a deadline for "complet[ing] discovery."  Id.

---

[1]  At the time the order was entered, former defendant
Appalachian Regional Healthcare, Inc. ("ARH") and USWA each had a
motion for summary judgment pending.  All three parties consented
to the stay.  On November 28, 2006, defendant ARH was dismissed
from the case pursuant to an agreed order submitted by plaintiff
and ARH, leaving the USWA as the only remaining defendant.

2

In the seminal case, the Ninth Circuit explained the "good cause" standard in Rule 16.

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D. N.J. 1990); Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 217 (N.D. Ind. 1990); Forstmann, 114 F.R.D. at 85; 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence). Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Cf. Engleson v. Burlington Northern R.R. Co., 972 F.2d 1038, 1043 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971) (same), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); Smith v. Stone, 308 F.2d 15, 18 (9th Cir. 1962) (same). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. See Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985). If that party was not diligent, the inquiry should end.

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Several circuit courts of appeals have adopted this understanding of Rule 16(b)'s "good cause" standard. Hussain v. Nicholson, 435 F.3d 359, 367 (D.C. Cir. 2006); O'Connell v. Hyatt

Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004); Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002); Bradford v. DANA Corp., Inc., 249 F.3d 807, 809 (8th Cir. 2001); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). While our court of appeals has yet to address the issue in a published opinion, the court adopts the reasoning of the other circuits.

This case presents a clear lack of diligence by the plaintiff.  In their response, former defendant ARH explained that, "Plaintiff did not initiate any written discovery, did not take depositions of any ARH employees and did not explore the theory of similarly situated co-workers during the nearly 11 months of discovery."  (ARH's Memo. in Supp. of Mot. to Strike and Resp. to Pl.'s Mot. to Extend Disc. at 3).  Plaintiff did not file a reply disputing this assertion.  In his motion and corresponding memorandum, plaintiff offered no reason why the information regarding the similarly situated employees was not discovered before the deadline rather than after.  (Memo. in Supp. of Mot. to Extend Disc. at 1-7).

Further, plaintiff did not seasonably file a motion to extend the deadline upon learning of the similarly situated employees whose presence was known to plaintiff months prior to

4

his agreement to stay the matter.  (Memo. in Supp. of Mot. for S.J. at 2, nn. 2, 5; Smith Affidavit, attached as Ex. 1 to Resp. to S.J.).  Both his memorandum of law, filed April 21, 2005, and his attached affidavit, dated April 19, 2005, highlighted the plight of similarly situated employees.  (Id.).  Yet, on June 15, 2005, Smith agreed to the stay without any mention of the need for additional time to conduct discovery.  (6-15-05 Order).  If further discovery on the similarly situated employees was instrumental to the plaintiff's claim, then he should have made the court aware in April 2005, when he knew of such employees, or at the latest in June 2005, when the court stayed the matter pursuant to the joint motion.

The only "new" evidence plaintiff offers in support of his motion to extend the discovery deadline is the affidavit of another former employee of ARH's now defunct facility in Man, West Viriginia, James McNeely.  The McNeely affidavit avers that he, like the plaintiff, filled out a request for consideration of transfer after the closure of the Man facility and met, following the closure, with union representative Terry Sims who advised during the meeting there was nothing the union could do. (McNeely Aff't ¶¶ 12, 14, attached as Ex. 1 to Memo. in Supp. of Mot. to Extend Disc.).  McNeely further swears that at least

5

eight of his former union co-workers at the Man facility were not re-hired by ARH, although he does not state whether they, too, requested consideration for transfer.  (<u>Id.</u> ¶ 16).

The McNeely affidavit, made by him on June 16, 2005, notes that Smith called him "several weeks" prior to his affidavit.  (<u>Id.</u> ¶ 15).  It was not until the date of his affidavit, however, that McNeely met with plaintiff's counsel. (<u>Id.</u> ¶ 16).  The failure to pursue McNeely's knowledge of similarly situated employees for at least several weeks after the phone call and after the expiration of the discovery deadline on March 7, 2007, underscores the plaintiff's lack of diligence.

Good cause is not present here.  Fed. R. Civ. P. 16; <u>Johnson</u>, 975 F.2d at 609.  Plaintiff was not diligent during the discovery period or even the few months afterwards.  The motion to extend the discovery deadline is denied.

Plaintiff further requested in his motion that the attached affidavit of James McNeely be considered in the summary judgment context.  (Mot. to Ext. Disc. at ¶ 5; Wherefore Cl.). Although the court considered the affidavit, it is not discussed below because it does not shed light on USWA's handling of plaintiff's grievance or USWA's alleged failure to obtain

6

suitable employment for him, which are the two issues to be
considered here.


II.


From 1991 until July 2000, plaintiff was an employee of
former defendant ARH at its Man, West Virginia facility.  (Compl.
¶¶ 11b).  During that time, plaintiff was a member of the USWA
union.  (Compl. ¶¶ 10, 11c; Memo. in Supp. of USWA's Mot. for
S.J. at 2).  On March 12, 1998, the USWA and ARH signed a
collective bargaining agreement ("CBA").  (Compl. ¶ 9).  On or
about June or July of 2000, ARH's Man, West Virginia facility
closed.  (Id. ¶ 11d; Memo. in Supp. of USWA's Mot. for S.J. at 2).
At that time, plaintiff was discharged.  (Compl. ¶ 11).
Plaintiff notified ARH he wanted to use his preferential hiring
rights afforded in the CBA for another ARH position, including
any positions at ARH's South Williamson, Kentucky facility.  (Id.
¶ 12a; Transfer Request, attached as Ex. C to ARH's Mot. for
S.J.; Memo. in Supp. of USWA's Mot. for S.J. at 2).  Plaintiff
called that facility several times between July 2000 and July
2001 to inquire about available employment.  (Smith Depo. at 13,
attached as Ex. B to ARH's Mot. for S.J.; Memo. in Opp. to Mot.
for S.J. at 8).

7

In July 2001, plaintiff took his wife to ARH's South Williamson facility where she would eventually give birth to their daughter. (Smith Depo. at 12-13, attached as Ex. B to ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 8; Memo. in Supp. of USWA's Mot. for S.J. at 2). While there, plaintiff checked the USWA job posting bulletin board. (Id.). The bulletin board indicated that someone with no seniority or experience was hired at the South Williamson facility for a position for which the plaintiff was qualified. (Smith Depo. at 12-13, 16, attached as Ex. B to ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 8). The CBA provided, however, for the plaintiff to be hired over similarly qualified applicants with less seniority. (Compl. ¶ 11f). On July 19, 2001, plaintiff orally presented his grievance, and on July 20, 2001, he officially filed it with the local union. (Smith Grievance, attached as Ex. D to ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 9).

The CBA provided a four step grievance process, and then, if necessary, arbitration. (CBA, attached as Ex. E to ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 9, n. 6). The first three steps are conducted by local union representatives. (Smith Depo. at 8, attached as Ex. B to ARH's

8

Mot. for S.J., Memo. in Supp. of USWA's Mot. for S.J. at 3-4).
After step three, the local union's practice was to turn the
representation over to the USWA.  (Smith Depo. at 8, attached as
Ex. B to ARH's Mot. for S.J.).  In Smith's case, the first three
steps were unsuccessful.  (Id.).  On or about February 6, 2002,
the step three meeting occurred, but a response from the company
was never received, apparently due to the departure of ARH's
human resources director.  (03-28-02 Simms letter to Shy,
attached as Ex. 2 to Shy's Depo.; Shy Depo. at 18, attached as
Ex. 1 to USWA's Mot. for S.J.).  On March 28, 2002, the president
of the local union, Terry Sims, wrote a letter to experienced
USWA representative Delbert "Deb" Shy outlining Smith's case.
(Id.)  Shy took over representation of Smith at step four, and
Smith understood that Shy was to continue to do so through
arbitration if it became necessary.  (Smith Depo. at 18-20,
attached as Ex. B to ARH's Mot. for S.J.).

        Despite plaintiff's requests to schedule the meeting,
it was not until October 16, 2002 that the step four grievance
meeting was held.  (Smith Depo. at 101, attached as Ex. B to
ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 9; Memo.
in Supp. of USWA's Mot. for S.J. at 5).  On October 30, 2002, ARH
notified Shy of its denial of plaintiff's grievance.  (10-30-06

Ltr., attached as Ex. 2 to Memo. in Opp. to Mot. for S.J.).  ARH
contended that the portion of the CBA upon which plaintiff sought
relief did not apply because plaintiff had been "terminated"
rather than "laid off."  (Id.).

After Shy's written notification of Smith's intent to
seek arbitration, ARH and Shy exchanged offers in an attempt to
settle Smith's grievance.  (Shy Ltr. to Eden,[2] attached as Ex. G
to ARH's Mot. for S.J.; Shy Depo. at 23-25, attached as Ex. 1 to
USWA's Mot. for S.J.).  ARH offered reinstatement, but not back
pay or back benefits, and Shy relayed this offer to Smith by
telephone call in November or December of 2002.  (Smith Depo. at
19, 22-23, 36, 81, attached as Ex. B to ARH's Mot. for S.J.; Shy
Depo. at 23-25, attached as Ex. 1 to USWA's Mot. for S.J.).
Smith rejected the offer.  (Shy Depo. at 24, attached as Ex. 1 to
USWA's Mot. for S.J.; Smith Depo. at 22-23, 92, attached as Ex. B
to ARH's Mot. for S.J.).

Shortly thereafter and sometime between November 2002
and January 2003, Shy phoned Smith a second time.  (Shy Depo. at

---

[2] This letter was incorrectly dated June 29, 2000.  In
deposition testimony, it was asserted that the correct date of
the letter should have been sometime in November or December
2002.  (Shy Depo. at 22, 30-31, attached as Ex. 1 to USWA's Mot.
for S.J.).

10

32, 36, attached as Ex. 1 to USWA's Mot. for S.J.; Smith Depo. at 22, 37-38, attached as Ex. B to ARH's Mot. for S.J.). During this conversation, Shy suggested that he negotiate as a term of the settlement that the hospital forgive the more than $13,000 in hospital bills that Smith owed for the birth of his child. (Smith Depo. at 22, 37-38, attached as Ex. B to ARH's Mot. for S.J.). Smith rejected this suggestion because he felt ARH should have paid the bill regardless and he made it known to Shy that he was upset with that portion of the offer. (Id.). Instead, he requested that Shy ask for one-half of the back pay and reinstatement of benefits and seniority he would have had absent the discharge. (Id. at 28, 37, 92).

Shy made a third call to the Smith residence sometime between November 2002 and April 2003. (Shy Depo 53, attached as Ex. 1 to USWA's Mot for S.J.; Smith Depo. at 22-23, 28, 32, 36, 53, attached as Ex. B to ARH's Mot. for S.J.). During this phone call, Shy left a message with Smith's wife that he had successfully convinced ARH to include the forgiveness of the hospital bills as an additional term in its settlement offer. (Smith Depo. at 22-23, 28, 32, 36, 53, attached as Ex. B to ARH's Mot. for S.J.; Shy Depo. at 53, attached as Ex. 1 to USWA's Mot. for S.J.). Smith testified that this further pursuit of the

hospital bill caused him to feel that Shy had "betrayed" him.
(Id. at 22-28, 37, 40-41, 47, 82-83, 92, 101-103). It was at
this point that Smith ceased contact with Shy and refused to
respond to any of Shy's inquiries. (Id. at 22-23, 28, 37).

Sometime between January 2003 and April 2003, Shy tried
to reach Smith multiple times by phone and by mail to no avail.
(Shy Depo. at 53, attached as Ex. 1 to USWA's Mot. for S.J.;
Smith Depo. at 81, attached as Ex. B to ARH's Mot. for S.J.).

Sometime during this January to April 2003 period,
plaintiff contacted William Duty, his counsel in this case.
(Smith Depo. at 49, attached as Ex. B to ARH's Mot. for S.J.).
On September 18, 2003, Duty corresponded with Shy on Smith's
behalf and urged the union to protect Smith's interests or face a
lawsuit. (09-18-03 Duty Ltr. to Shy, attached as Ex. 3 to Memo.
in Opp. to Mot. for S.J.). The letter laid out a series of
minimum demands. (Id.). On September 29, 2003, Shy responded
and explained to Duty that he did not think many of the damages
mentioned in the letter would be available to Smith at
arbitration. (09-29-03 Shy Ltr. to Duty, attached as Ex. H to
ARH's Mot. for S.J.).

In a letter dated January 29, 2004, plaintiff's counsel

12

notified Shy that plaintiff had no choice but to file suit.  (01-29-04 Duty Ltr. to Shy, attached as Ex. 4 to Memo. in Opp. to Mot. for S.J.).  In a responsive letter to Smith dated February 23, 2004, Shy explained that he had not been able to prepare for arbitration without Smith's cooperation and stated, "I cannot keep this grievance on hold forever, if he does not wish to contact me within the next ten days, I will have no choice but to withdraw his grievance."  (02-23-04 Shy Ltr. to Smith, attached as Ex. 5 to Memo. in Opp. to S.J.).  Shy wrote a similar letter to plaintiff's counsel that same day.  (02-23-04 Shy Ltr. to Duty, attached as Ex. H to ARH Mot. for S.J.).

In April 2004, the plaintiff sued ARH and USWA in the Circuit Court of Mingo County alleging a hybrid breach of the duty of fair representation and various state law claims. (Compl.).  On August 20, 2004, former defendant ARH removed the case to this court based on § 1331 jurisdiction.  (Not. of Rem. at 1).

III.

USWA asserts that all state law claims are preempted by

§ 301[3] of the federal Labor Management Relations Act ("LMRA"). (Memo. in Supp. of USWA's Mot. for S.J. at 11).  USWA then seeks summary judgment based upon plaintiff's failure to create any genuine issue of material fact which would constitute a breach of the duty of fair representation and, alternatively, upon the defense that the six month statute of limitations bars the action.  (<u>Id.</u> at 10-11).

A.      Preemption

        Because Congress intended the interpretation and enforcement of collective bargaining agreements to be governed by uniform federal law, state regulation that "purports to define the meaning or scope of a term" of a CBA is preempted.  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 209-210 (1985).  A state law claim which is "substantially dependant" upon the interpretation of rights and duties under the CBA is preempted by federal law.  <u>Id.</u> at 220.  The substantial dependence question turns on whether the dispute is "inextricably intertwined" with the CBA.  <u>Id.</u> at 213.  When the claim can be resolved without

_____

        [3] This preemption may also be referred to as § 185 preemption based on its official United States Code citation, 29 U.S.C. § 185.

14

referring to the CBA, it is not preempted.  See e.g. Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 407-410 (1988) (holding that resolution of the retaliatory discharge claim required inquiry into facts surrounding the employer's motivation and not an interpretation of the labor agreement); Hanks v. General Motors Corp., 906 F.2d 341, 343-344 (8th Cir. 1990) (holding that claim for outrage and intentional infliction of emotional distress based on employer's requirement that plaintiff work under the supervision of a man who sexually assaulted her daughter was not preempted because that claim involved a duty independent of the CBA).

>       1.       State Law Breach of Contract Claim

Count III of the complaint is entitled "Breach of Contract by Defendant USWA." (Compl. at 7-8).  Smith admitted no contract exists other than the CBA.  (Smith Depo. at 151-152, attached as Ex. B to ARH's Mot. for S.J.).  Thus, Count III is essentially a claim for breach of the CBA and is clearly preempted under Lueck, 471 U.S. at 220.

The other breach of contract claim, Count V, was alleged only against ARH and need not be considered further.

15

To the extent the USWA breached the CBA, those claims are subsumed by the breach of the duty of fair representation claim and will be considered below under that standard.

2.      State Law Tort Claims

The heading in Count IV of the complaint alleges the "Torts of Bad faith, Outrage and Intentional Infliction of Emotional Distress by Defendant USWA." (Compl. at 7). Count II also included the "Tort of Outrage" in its claim which otherwise alleged breach of the USWA's duty of fair representation. (Id. at 5). In his deposition, plaintiff admitted that these state tort claims arose out of the closure of ARH's facility and ARH's failure to transfer him in violation of the CBA. (Smith Depo. at 153-156, attached as Ex. B to ARH's Mot. for S.J.). To decide these claims, the court would be required to analyze and interpret the terms of the CBA. Furthermore, in support of its claim for the tort of outrage, the plaintiff asserts,

> [t]hat the Defendant USWA's failures in;
>     a. Fairly representing Plaintiff in these matters;
>     b. Assisting Plaintiff in obtaining employment;
>     c. Fulfilling their contractual and other legal
>     responsibilities;
>
> Are outrageous and shock the conscience.

16

(Compl. ¶ 22).  These claims are nearly identical to those allegations made under the heading of breach of the duty of fair representation in Count I.  (Id. at 4-5).  Because the state law claims for bad faith, outrage, and intentional infliction of emotional distress are either disguised fair representation claims or depend on consultation of the CBA, they are preempted by the LMRA.  See Lueck, 471 U.S. at 220.

Plaintiff acknowledges that his tort claims "may well be preempted."  (Memo. in Opp. to Mot. for S.J. at 5).  His only contention with respect to these claims is that "additional discovery could add merit to these claims."  (Id.).  The court has already highlighted plaintiff's failure to conduct any discovery during the eleven months he had previously, and the court has denied his motion to extend the discovery deadline.

Count VI is described in the heading as "Torts of Wrongful Discharge: Bad Faith, Outrage, and Intentional Infliction of Emotional Distress."  (Compl. at 9).  Count VI mentions ARH exclusively.  It would be difficult to conceive of a wrongful discharge claim against the USWA because it was ARH, not USWA, that made the decision to end plaintiff's employment.  That claim was extinguished when ARH was dismissed from the case and need not be further considered.

17

Assuming the wrongful discharge claim were allowed to proceed against USWA, it would be preempted by the LMRA.  The wrongful discharge claim was not pleaded based on any violation of a substantial public policy or suspect classification pursuant to the West Virginia Human Rights Act.  (Id.).  Thus, the only potential basis for the wrongful discharge claim would be the CBA.  Because it is dependent upon the CBA for its very existence, it is preempted.  See Lueck, 471 U.S. at 220.

In summary, all of plaintiff's state law claims are preempted by the LMRA.[4]

---

[4] **Even assuming arguendo the state law claims were not preempted, they would also fail on the merits.  Plaintiff has not identified a genuine issue of material fact that would give rise to a successful claim for outrage, bad faith, or intentional infliction of emotional distress.  In order to succeed on a claim for the tort of outrage or intentional infliction of emotional distress, a plaintiff must meet the following standard: "[o]ne who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm."  Syl. pt. 1, Harless v. First National Bank in Fairmont, 169 W.Va. 673, 289 S.E.2d 692 (1982).  While the court does not downplay the grief Mr. Smith suffered due to the loss of his job, the plaintiff has not provided any set of facts that would meet the elements of this standard in a cause of action against the USWA.  As discussed previously, the record is also devoid of any evidence that would suggest the USWA acted in bad faith.**

B.        The Summary Judgment Standard


        A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

        A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could

not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

        Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

        A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

20

C.        The Fair Representation Doctrine


        In assessing whether the duty of fair representation has been breached, union judgments are afforded great deference. Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 78 (1991).

> Congress did not intend judicial review of a union's
> performance to permit the court to substitute its own
> view of the proper bargain for that reached by the
> union. Rather, Congress envisioned the relationship
> between the courts and labor unions as similar to that
> between the courts and the legislature. Any substantive
> examination of a union's performance, therefore, must
> be highly deferential, recognizing the wide latitude
> that negotiators need for the effective performance of
> their bargaining responsibilities.

Id.


        A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967).  "Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these . . . [prongs] represents a distinct and separate obligation." Thompson v. Aluminum Co. of America 276 F.3d 651, 657 (4th Cir. 2002)(citing Griffin v. Int'l Union, 469 F.2d 181, 183 (4th Cir. 1972)).  In fact, "[w]hile the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of [the]

discrimination and bad faith [prongs] must focus on the
subjective motivation of the union officials." Thompson, 276
F.3d at 658 (citing Crider, 130 F.3d at 1243).  In this case, the
record is devoid of any evidence that the USWA or its agent,
Delbert Shy, acted with any sort of discriminatory or bad faith
animus towards Smith.[5]  The court thus focuses primarily on the
arbitrary prong of the calculus.

      "To be 'arbitrary,' a union's conduct towards its
member must be so far outside a wide range of reasonableness that
it is wholly irrational." Thompson, 276 F.3d at 657 (citing
O'Neill, 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)).
Generally, inept or negligent conduct by the union is not enough,
in and of itself, to constitute a breach of the duty of fair
representation. Carpenter v. West Virginia Flat Glass, Inc., 763
F.2d 622, 624 (4th Cir. 1985); Garrison v. Cassens Transport Co.,
334 F.3d 528 (6th Cir. 2003), cert. denied, 124 S. Ct. 1413
(2004).  Embodied within the "arbitrary" prong, however, is the

---

[5]  Smith admitted in his deposition that to his knowledge
the USWA did not conspire with ARH.  (Smith Depo. at 70-71, 74,
96, attached as Ex. USWA's Mot. for S.J.).  Smith accused Shy of
"betraying" him, but this allegation of betrayal was based solely
on his pursuit of the hospital bill forgiveness as an element of
the settlement.  (Id. at 22-28, 37, 40-41, 47, 82-83, 92, 101-
103).  Smith does not support this assertion of "betrayal" with
additional facts beyond the hospital bill controversy.  (Id. at
22-28, 37, 40-41, 47, 82-83, 92, 101-103).  The negotiating
tactic regarding the hospital bill does not rise to the level of
"bad faith" or "discrimination" necessary to constitute a breach
of the duty of fair representation. See Vaca, 386 U.S. at 190.

idea that a union cannot ignore a member or otherwise conduct itself in a perfunctory fashion.  <u>Vaca</u>, 386 U.S. at 192; <u>Carpenter</u>, 763 F.2d at 624.

Count I of plaintiff's complaint included the following five specific allegations relating to the USWA's breach of the duty of fair representation: (1) failure to process or investigate his grievance in a timely manner; (2) failure to assist him in obtaining suitable employment; (3) failure to pursue his claim against ARH; (4) failure to negotiate with ARH; and (5) failure to schedule a hearing before an arbitrator in a timely manner.  (Compl. at ¶ 12c; <u>see</u> <u>also</u> Memo. in Opp. to Mot. for S.J. at 3, 9-12).

1.   Dilatoriness in the Grievance Procedure

Both the first and fifth allegations in Count I focus on the USWA's untimeliness.  (Compl. at 12f; <u>see</u> <u>also</u> Smith Depo. at 44-46, attached as Ex. B to ARH's Mot. for S.J.).  The USWA was not involved in the first three steps of the grievance procedure.  (Smith Depo. at 8, attached as Ex. B to ARH's Mot. for S.J.; Shy Depo. at 8, 16-17, attached as Ex. 1 to USWA's Mot. for S.J.).  Those negotiations were conducted by either Smith himself or by members of the local union.  (Smith Depo. at 8, attached as Ex. B to ARH's Mot. for S.J.).  Consequently, any

23

claim concerning the USWA's untimeliness would be limited to two discrete time periods.  The first is between step three and step four, and the second is between step four and arbitration.

The step three meeting was apparently held on February 6, 2002, and the USWA was not notified about Mr. Smith's grievance until March 28, 2002, when the local union president wrote a letter to Shy.  (03-28-02 Simms Ltr. to Shy, attached as Ex. 2 to Shy's Depo.).  It was not until October 16, 2002, that the step four grievance hearing occurred.  (Smith Depo. at 101, attached as Ex. B to ARH's Mot. for S.J.; Memo. in Opp. to Mot. for S.J. at 9; Memo. in Supp. of USWA's Mot. for S.J. at 5).  Thus, approximately six and a half months elapsed between the USWA's knowledge of Smith's grievance and the step four meeting.

ARH's denial at step four was relayed to Shy by letter on October 30, 2002.  (10-30-06 Letter, attached as Ex. 2 to Memo. in Opp. to Mot. for S.J.).  Plaintiff ceased contact with USWA, however, between late January 2003 and April 2003.  (Smith Depo. at 22-23, 28, 37, attached as Ex. B to ARH's Mot. for S.J.).  Because of plaintiff's refusal to communicate with Shy, the court measures the delay for which the USW could be held responsible to be between October 30, 2002 and the point plaintiff terminated communication with Shy in early 2003.

The lag between step three and step four breached the

time requirement set forth in the CBA.  The CBA provides that
"the grievance must, within ten (10) working days after the
answer in Step 3, be presented in Step 4 by the designated
International Union representative to the designated
representative of the President of ARH."  (CBA at Article XXXIII,
pg. 82, attached as Ex. A to ARH's Mot. for S.J.).  A breach of
the CBA, however, is not a <u>per</u> <u>se</u> breach of the duty of fair
representation.[6]  The breach of the CBA must be viewed using the
general fair representation standard of whether the conduct was
"arbitrary, discriminatory, or [done in] bad faith."  <u>Vaca</u>, 386
U.S. at 190.  Mere negligence is not a basis for a successful
claim.  <u>Id.</u> at 192; <u>United Steelworkers of America, AFL-CIO-CLC</u>
<u>v. Rawson</u>, 495 U.S. 362, 371-373 (1990).  At most, that is what
occurred here.

     While not ideal, the six and a half month period
between step three and step four and the approximately three to

---

[6]     The USWA arguably violated the CBA in the stage between
step four and arbitration as well.  The CBA stated "within ten
(10) working days after written demand for arbitration, an
arbitrator will be selected . . ."  (CBA at Article XXXIII, pg.
84, attached as Ex. A to ARH's Mot. for S.J.).  The written
demand for arbitration was made sometime in early November 2002.
(Shy Letter to Eden, attached as Ex. G to ARH's Mot. for S.J.;
Shy Depo. at 22-25, 30-31, attached as Ex. 1 to USWA's Mot. for
S.J.).  The CBA included a caveat that "[t]his time limit may be
extended by mutual agreement."  (<u>Id.</u> at 84).  While there does
not appear to be a formal "mutual agreement," there may have been
an understanding that Shy would continue to negotiate with ARH
before scheduling the arbitration.  (Shy Depo. at 41-42, attached
as Ex. 2 to USWA's Mot. for S.J.).

six months that elapsed between the step four decision and the defendant's refusal to speak with the USWA do not rise to the level of wholly irrational, perfunctory, or otherwise arbitrary conduct necessary for a successful breach of the duty of fair representation claim.  See Vaca, 386 U.S. at 190-192.  "Malicious or egregious delay in pursuing plaintiff's rights can violate the Vaca proscription."  Walker v. Consolidated Freightways, Inc., 930 F.2d 376, 382 (4th Cir. 1991).  However, there are no allegations by the plaintiff here that the delay was malicious.  Though Walker did not elaborate further on what constitutes an "egregious delay," at least one district court has found that a two-year delay between the fourth step of the grievance and the withdrawal of the grievance was "not per se unreasonable" when plaintiff had "submitted no proof that the Union typically processes other grievances faster than his, or that the Union acted with bad faith."  Armstrong v. Chrysler Corp., 972 F. Supp. 1085, 1090 (E.D. Mich. 1997).

The district court in Armstrong added, "[m]oreover, nothing suggests that the passage of time affected the ultimate disposition of plaintiff's grievance."  Id.  Two circuit courts of appeal have similarly found that a plaintiff must establish that the plaintiff was harmed by the union's arbitrary conduct.  Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995); Black v. Ryder, 15 F.3d 573, 585 (6th Cir. 1994); Ryan v.

26

General Motors Corp., 929 F.2d 1105, 1109 (6th Cir. 1989).   In

Ryan, a two-year delay in the union notifying the member of the

withdrawal of his grievance was not a breach of the duty because

no prejudice resulted.   Ryan, 929 F.2d at 1109.   Importantly,

Smith, unlike the plaintiffs in Walker, was not injured by the

delay here.   He still had the benefit of the step four meeting

and there is no indication that he was going to be denied the

benefit of arbitration.   Plaintiff has made no other argument as

to why the delay caused him harm.

As a final consideration, a union's failure to keep a

grievant informed of the status of the grievance is not, standing

alone, a breach of the duty of fair representation.   Caputo v.

National Ass'n of Letter Carriers, 730 F. Supp. 1221, 1230 (E.D.

N.Y. 1990) (citing Whitten v. Anchor Motor Freight, Inc., 521

F.2d 1335, 1341 (6th Cir. 1975).

Accordingly, the six and a half months delay between

step three and step four and the three to six months delay

between step four and the cessation of communication with the

USWA by Smith were not "so far outside a wide range of

reasonableness" to be considered "wholly irrational,"

particularly inasmuch as plaintiff provides no evidence that

other grievances were processed more efficiently or that the

delays caused him harm.   O'Neill, 499 U.S. at 78.

On September 18, 2003, counsel for plaintiff requested that Shy schedule arbitration.  (09-18-03 Duty Ltr. to Shy, attached as Ex. 3 to Memo. in Opp. to Mot. for S.J.).  An arbitrator, however, was never selected.  Quite reasonably, Shy refused to proceed to arbitration before he spoke with Smith. (02-23-04 Shy Ltr. to Smith, attached as Ex. 5 to Memo. in Opp. for S.J.).  As such, these accusations of dilatoriness must be viewed in light of Smith's refusal to cooperate with the USWA. With this undisputed fact in mind, the USWA's failure to schedule arbitration cannot be viewed as wholly irrational, perfunctory, or otherwise arbitrary.  See Vaca, 386 U.S. at 190-192.

Again, any harm that Smith incurred due to the USWA's dilatoriness could have been mitigated, or even alleviated, by his cooperating with Shy.  The USWA did process the grievance through step four, and deposition testimony indicated that the USWA would have proceeded to arbitration had Smith not ceased personal contact with Shy.  (Shy Depo. at 28, 41-43, attached as Ex. 1 to USWA's Mot. for S.J.).  During the time the USWA was accused of being dilatory, Shy was also in the midst of negotiations with ARH in an attempt to settle the case and avoid arbitration, albeit unsuccessfully.  (Id. at 31, 34, 41-42). These added factors assuage any inference of arbitrary or perfunctory conduct that could be lodged against the USWA.

2.   Failure to Assist Plaintiff in Obtaining
     Employment


The second duty of fair representation allegation in the complaint, listed as part of Count I and then repeated as a separate claim in Count II, implicated the union's failure to assist Smith in obtaining suitable employment.  (Compl. ¶¶ 12(c), 15-25).  Plaintiff contends that the USWA has "done nothing of substance . . . to assist plaintiff in obtaining suitable employment" after learning from plaintiff in July 2001 of ARH's alleged wrongful hiring practices.  (Id. ¶¶ 17-20).  Plaintiff has simply failed to establish any set of facts or a genuine issue of material fact that the USWA acted in a wholly irrational, perfunctory, or otherwise arbitrary manner in this regard.  (Smith Depo. at 62-63, 96, attached as Ex. B to ARH's Mot. for S.J.); see Vaca, 386 U.S. at 190-192.  Indeed, plaintiff admitted the USWA was successful in convincing ARH to offer Smith reinstatement of his job within 120 days, but he refused the offer.  (Smith Depo. at 19, attached as Ex. B to ARH's Mot. for S.J.).  It is thus erroneous for plaintiff to claim that USWA failed to assist him in obtaining suitable employment.

### 3.  General Pursuit and Negotiation of Grievance

The third and fourth duty of fair representation allegations in the complaint implicated the union's failure to both pursue and negotiate resolution of Smith's claim, and the two may be consolidated and considered together for discussion purposes here.  (Compl. ¶ 12(c)).  Defendant USWA processed the grievance until Smith ceased contact with them.  (Smith Depo. at 22-28, 37, attached as Ex. B to ARH's Mot. for S.J.; Shy Depo. at 20-24, attached as Ex. 1 to USWA's Mot. for S.J.).  During this time, the USWA engaged in significant settlement negotiations with ARH.[7]  (Smith Depo. at 47, attached as Ex. B to ARH's Mot. for S.J.; Shy Depo. at 31,34, 41-42, attached as Ex. 1 to USWA's Mot. for S.J.).  Defendant continued to attempt to contact plaintiff, but it was plaintiff who severed ties with the defendant because of a particular settlement term defendant attempted to negotiate on Smith's behalf.  (Smith Depo. at 22-23, 28, 37, attached as Ex. B to ARH's Mot. for S.J.; Shy Depo. at 28, 41-42, attached as Ex. 1 to USWA's Mot. for S.J.).  These actions alone are sufficient to establish that the USWA did not act in a wholly irrational, perfunctory, or otherwise arbitrary manner in pursuing or negotiating plaintiff's claim against ARH

---

[7]  In fact, it was Shy's very negotiating tactics which disturbed Smith.  (Shy Depo. at 22-28, 37, 40-41, 47, 82-83, 92, 101-103, attached as Ex. 1 to USWA's Mot. for S.J.).

30

and are enough to defeat the third and fourth allegations in the complaint.  See Vaca, 386 U.S. at 190-192.

Because plaintiff has failed to present evidence from which a reasonable fact finder could conclude that the union's actions were wholly irrational, perfunctory, or otherwise arbitrary, defendant USWA is entitled to summary judgment on the duty of fair representation claim.  See Anderson, 477 U.S. at 248; Vaca, 386 U.S. at 190-192.

D.      Statute of Limitations[8]

The statute of limitations for suits alleging a breach of the union's duty of fair representation is six months as set forth in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).  DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 170, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).  Questions as to when a federal cause of action accrues and the related question of whether the statute of limitations is tolled are federal questions determined by federal law, with the

_____

   [8] Although all of the fair representation claims are dismissable on the merits, the court, in the interest of thoroughness, addresses the statute of limitations issue relating to the duty of fair representation allegations with the exception of the aspect of the claim involving the alleged dilatoriness in handling the grievance.

general rule being that the cause of action accrues when the plaintiff knows or should know that a violation of his rights has occurred.  <u>Cox. v. Stanton</u>, 529 F.2d 47, 50 (4th Cir. 1975).

As a starting point for its analysis, it must first be determined when the plaintiff discovered the acts constituting the alleged breach of the duty of fair representation.  With respect to a member's fair representation suit against a union, courts have held that the limitations period begins to run when an employee discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.  <u>Barrett v. Ebasco Constructors, Inc.</u>, 868 F.2d 170, 171 (5th Cir. 1989); <u>Wise v. Dallas & Mavis Forwarding Co.</u>, 753 F. Supp. 601, 605 (W.D. N.C. 1991).

The USWA alleges the statute of limitations is a basis for granting summary judgment as to all duty of fair representation claims in this case.  (USWA Memo. in Supp. of Mot. for S.J. at 19-20).  The lawsuit was filed in April 2004. Plaintiff admittedly ceased contact with Shy sometime between January and April 2003. (Smith Depo. at 22-23, 28, 37, attached as Ex. B to ARH's Mot. for S.J.).  The only contact Smith had with Shy or the USWA after that date was through his attorney or by phone messages.  (<u>Id.</u>).  At the time he severed contact with Shy, and more than one year prior to the filing of this lawsuit,

32

Smith knew or should have known of any deficiencies in USWA's representation, including its dilatoriness, negotiating tactics, and any failure to assist him in obtaining employment.

      Plaintiff's response indicates as follows:

> The timeliness of an action brought under 29 USCS § 185 must be measured from the date on which the employee knew or should have know of the union's or employer's <u>final action</u> (emphasis added) whichever occurs later. <u>Hill v. Georgia Power Co.</u>, 768 F.2d 1[071] (11th Cir. 1985). In the case at hand, the action which most closely resembles a 'final action' is the February 23, 2004 letter to Mr. Smith wherein the USWA threatens to withdraw Mr. Smith's grievance. Both defendants point to Plaintiff's statement 'that in November or December, 2002, the union did Mr. Smith wrong,' as the time when Mr. Smith knew or should have known of the Defendants USWA's breach of its duty of fair representation. However, subsequent communication between Plaintiff (and/or Plaintiff's counsel) and the Defendant USWA belie that assertion.

(Pl. Resp. to Mot. for S.J. at 5-6). Contrary to the implication in plaintiff's response, <u>Hill</u> does not set forth a rule different than the one first set forth above as emanating from <u>DelCostello</u> and <u>Cox</u>. In <u>Hill</u> it is stated: "[g]enerally, a cause of action accrues under § 301 [29 U.S.C. § 185], and the statute of limitations begins to run, when in the exercise of reasonable diligence the claimant knew or should have known of the injury." <u>Hill</u>, 786 F.2d at 1074-75. In <u>Hill</u>, however, the circuit court applied equitable tolling principles to a situation where a plaintiff withheld from filing suit when union officials led the union member employee to believe that relief might be forthcoming

pending the conclusion of his criminal case.  Id. at 1075-76.
The facts in Hill are not analogous, and there is no basis for an
equitable tolling argument against the union here.  Plaintiff did
not rely to his detriment on any representation by the union
after he severed contact with them more than six months prior to
the filing of the lawsuit.  The USWA's letter dated February 23,
2004, was merely a response to a letter from plaintiff's counsel
and explained the USWA's understandable position that it could
not process Smith's grievance without his cooperation.  The
USWA's letter did not set forth any new facts or new arguments
that would change the plaintiff's knowledge of the USWA's conduct
at issue nor could it have caused Smith to delay in filing suit
as in Hill.

Consequently, all duty of fair representation claims
are time-barred.

IV.

Based on the foregoing discussion, it is ORDERED as
follows:

1.  Plaintiff's motion to extend the discovery deadline
be, and it hereby is, denied;

2.  Defendant USWA's motion for summary judgment be,

34

and it hereby is, granted as to all claims in the complaint; and

        3.   This action be, and it hereby is, dismissed with prejudice and stricken from the court's docket.

        The Clerk is directed to forward copies of this order to all counsel of record.

                            DATED: August 29, 2007

                            John T. Copenhaver, Jr.
                            United States District Judge